# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH B. FARRIS, JR., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 16-CV-272-SMY-RJD ) |
| SUSAN KURR, HEATHER CARPENTER WAMPLER, PHIL MARTIN, RANDY GROUNDS, ILLINOIS DEPT. OF CORRECTIONS, and WEXFORD HEALTH SOURCES, INC., | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Kenneth Farris, a former inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Robinson Correctional Center ("Robinson"). Specifically, Farris alleges he has permanent paralysis in his right arm and right leg and, as a result, is confined to a wheelchair and requires assistance to perform activities of daily living. He contends that while at Robinson, he was not provided with an assistant or otherwise accommodated in order to perform his activities of daily living.

Farris brings this action against IDOC, Robinson Warden Randy Grounds, Health Care Administrator and ADA Coordinator Phil Martin, Health Care Administrator and ADA Coordinator Susan Kerr, Director of Nursing Heather Carpenter Wampler, and Wexford Health Sources, Inc. ("Wexford"). He is proceeding on the following claims asserted in his First Amended Complaint (Doc. 39):

        Count One:    Violation of the Americans with Disabilities Act against the IDOC.

        Count Two:    Violation of the Rehabilitation Act against the IDOC.

> Count Three: Eighth Amendment deliberate indifference claim against Wexford, Kerr, Wampler, Martin, and Grounds.
>
> Count Four: Eighth Amendment unconstitutional conditions of confinement claim against Wexford, Kerr, Wampler, Martin, and Grounds.

This case is now before the Court on the Motions for Summary Judgment filed by Defendants Wampler and Wexford (Doc. 93), Defendants Grounds, IDOC, Kerr, and Martin (Doc. 98), and Plaintiff (Docs. 99 and 101). Responses have been filed (Docs. 104, 109-110). For the following reasons, Defendants Wampler and Wexford's motion is **GRANTED IN PART AND DENIED IN PART**, Defendants Grounds, IDOC, Kerr, and Martin's motion is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's motions are **DENIED**.

## **Background**[1]

In 2009, Kenneth Farris suffered a stroke that caused the permanent paralysis of his right arm and right leg (Deposition of Kenneth Farris, Doc. 94-1 at 4, 17). As a result of his paralysis, Farris is confined to a wheelchair (*Id.* at 4).

Farris was incarcerated at Robinson from March 2015 to November 2015 (*Id.*). On March 28, 2015, Dr. Vipin Shah examined him and ordered the following: (1) a low bunk permit; (2) that Farris be medically unassigned (not be required to work); (3) a key lock rather than a combination lock; and (4) that Farris receive a wheelchair pusher or assistant for his activities of daily living ("ADLs") – all for six months (Deposition of Dr. Vipin Shah, Doc. 94-6 at 9; *see* Doc. 98-3 at 3 and Doc. 98-5).

Farris received a low bunk and a key lock, and was medically unassigned while he was at Robinson, but he was never assigned a wheelchair pusher or assistant (hereinafter referred to as an ADA attendant) (Doc. 94-1 at 6). Farris had previously been assigned an ADA attendant at another facility and the attendant helped Farris dress and transfer to the shower, and also pushed

---

[1] In reviewing the record, the Court views and recites the facts in the light most favorable to Plaintiff Kenneth Farris. *Anderson v. Donhaoe*, 699 F.3d 989, 994 (7th Cir. 2012).

him to chow and retrieved his tray (*Id.* at 12-13). Because he did not have an attendant at Robinson, Farris had difficulty fastening his diapers, transferring from his bed to his chair, dressing, and otherwise managing his activities of daily living (*Id.* at 4, 17-18; *see* Doc. 103-9 at 2). Farris was able to transfer to the toilet in his dormitory which was ADA accessible, so long as he was already in his chair (Doc. 94-1 at 5-6, 18).

Within about a week of his arrival at Robinson, Farris spoke with Health Care Administrator and ADA Coordinator Susan Kerr about the fact that he did not receive an ADA attendant (*Id.* at 13). He had approximately five conversations with Kerr about getting an attendant, but she always just responded that she was "working on it" (*Id.* at 14). Farris also submitted kites to Kerr, but they were either ignored or met with the same response (*Id.* at 7).

On April 15, 2015, Farris submitted a grievance to his counselor, explaining that he is paralyzed on one side of his body and is unable to transfer alone or change his diapers (Doc. 103-9 at 2). After Farris' counselor responded to the grievance, it was reviewed by the grievance officer who interviewed Kerr (*Id.* at 2-3). According to the grievance officer's written response, Kerr stated that "ADA requirements are met throughout the facility" and she recommended that Farris change his diapers in the health care unit during medical line for more privacy (*Id.* at 3). The grievance officer ultimately recommended denial of Farris' grievance and Warden Randy Grounds concurred with the decision (*Id.*). Farris submitted another grievance concerning his issues on April 30, 2015, which was met with the same response by Kerr (Doc. 103-10). The grievance officer recommended that the April 30, 2015 grievance also be denied, and Warden Grounds concurred (*Id.*).

Farris also submitted kites and spoke to Director of Nursing Heather Carpenter Wampler about not receiving an ADA attendant (Doc. 94-1 at 7). Wampler told Farris to get a friend to help him (*Id.* at 8). An April 27, 2015 grievance officer's report responding to one of Farris'

grievances concerning the attendant issue indicates that Wampler was contacted regarding the same and remarked that there was no indication that Farris was to receive an attendant, and that he should write to Susan Kerr[2] (Doc. 103-20). Farris submitted another grievance on July 12, 2015, explaining that he is unable to care for himself and that Robinson is not ADA accessible for his needs (Doc. 103-11). The counselor's response cites the "DON" (Wampler), who indicated that Farris was housed in a dorm that is ADA/wheelchair accessible and that placement in the health care unit requires a medical order (Doc. 103-16 at 15; Doc. 103-11).

Pursuant to IDOC Administrative Directive 04.03.101, offenders with a known disability "shall be referred to the Facility Americans with Disabilities Act (ADA) Coordinator for assessment of needed accommodations for access to programs and services" (Deposition of Susan Kerr, Doc. 94-2 at 11; Doc. 103-4 at 4). However, the Medical Director is responsible for determining if an inmate is disabled pursuant to the ADA at Robinson (Doc. 94-2 at 14). If the Medical Director orders that an inmate receive an ADA attendant, then IDOC is responsible for implementing the order (Deposition of Dr. Roderick Matticks, Doc. 94-4 at 9).

During Farris' time at Robinson, disabled inmates were not always assigned an attendant. Instead, inmates were allowed to ask one of the other one hundred inmates on their wing to help them with their wheelchair (Deposition of Corporate Representative for the IDOC, Doc. 94-5 at 13). If an inmate was assigned to be an ADA attendant, such assignment would be made through the Placement Office (Doc. 94-5 at 9, 17).

**Discussion**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-*

---

[2] The Court notes the Wexford Defendants' objections to Farris' use of grievances on the basis of hearsay. The Court has considered the grievances for the non-hearsay purpose of notice. Defendants shall be allowed to raise their hearsay objections at trial.

*Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### COUNTS ONE and TWO

In Counts One and Two, Farris alleges IDOC violated the ADA and Rehabilitation Act by failing to accommodate his disability and provide him an ADA attendant or transfer board. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act prohibits any agency that receives federal funds from excluding, subjecting to discrimination, or denying the benefits of any of their programs to otherwise qualified individuals with disabilities. 29 U.S.C. § 794(a). Failure to make reasonable accommodations to ensure participation in the public entity's programs or services by a person with a disability qualifies as "discrimination." 42 U.S.C. § 12112(b)(5)(A); *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006).

In the prison context, a plaintiff can make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act by showing: (1) he is a qualified person; (2) with a disability; (3) the Department of Corrections denied him access to a program or activity because of his disability or otherwise subjected him to discrimination; and (4) the denial or discrimination was by reason of his disability. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012), citing 29 U.S.C. § 705(2)(B); *Wis. Cmty. Serv. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006); *Foley v. City of Lafayette*, 359 F.3d at 928 (7th Cir.2004); *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997). Refusing to make reasonable accommodations is tantamount to denying access. Although the Rehabilitation Act does not expressly require accommodation, "the Supreme Court has located a duty to accommodate in the statute generally." *Id*. In the prison setting, accommodations should be judged in light of overall institutional requirements which include safety, security, and feasibility. *Love v. Westville Correctional Center,* 103 F.3d 558, 561 (7th Cir. 1996).

In this case, it is undisputed that Farris is a qualified person with a disability. *See* 29 U.S.C. § 705(9)(B); 42 U.S.C. §12102(1)(A). It is also undisputed that as a public entity, IDOC is subject to the ADA and Rehabilitation Act. IDOC, however, contends that Farris has failed to demonstrate that he was discriminated against based on his disability. In particular, IDOC argues that if it failed to supply Farris with an ADA attendant, such circumstance amounts to mere negligence, and, in any event, Farris was not denied the benefit of the services, programs, or activities of IDOC. Finally, IDOC asserts that Farris' claim that he was not able to eat meals or use the bathroom facilities is not supported by any evidence.

Access to showers, meals, and toilet facilities is considered a "program or activity" within the meaning of the ADA. *Jaros*, 684 F.3d at 672 (noting that inmate access to showers and meals is a program or activity); *see Phipps v. Sheriff of Cook Cty.*, 681 F.Supp.2d 899, 916

(N.D. Ill. 2009) (collecting cases holding that "showering, toileting, and lavatory use were regarded as programs and/or services under the ADA"). Although disputed by Defendants, Farris has presented at least some evidence that because he was never provided an ADA attendant, he had limited mobility to transfer out of bed into his wheelchair, and as a result, had limited access to the toilet facilities, meals, and other services at Robinson. The fact that Robinson did not always assign ADA attendants to disabled inmates does not mitigate its responsibility under the ADA and Rehabilitation Act. Because there remains a material fact in dispute as to whether Farris was denied access to a program or activity due to the IDOC's failure to assign him an ADA attendant, Counts One and Two will proceed to trial. Neither Farris nor IDOC are entitled to judgment as a matter of law on these claims.

## COUNT THREE

Farris claims that Defendants Kerr, Wampler, Martin, and Grounds were deliberately indifferent in ignoring the medical orders submitted by Dr. Shah, and in failing to provide Farris with an ADA attendant or otherwise providing assistance so that Farris could engage in his activities of daily living. Farris also alleges Defendant Wexford maintained a policy of ignoring his requests for an ADA attendant or other assistance.

The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). As the Supreme Court has recognized, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prove deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily

activities or which involves chronic and substantial pain.  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.  Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).  *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).  However, the Eighth Amendment does not entitle inmates to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm."  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.  *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

The IDOC Defendants argue Farris did not suffer from a serious medical need because he cannot show he suffered harm as a result of Defendants' alleged failure to follow Dr. Shah's treatment plan and to provide him an ADA attendant.  Farris correctly points out that the paralysis of the right side of his body is clearly a serious medical need that mandates treatment by a physician.  The question is not whether Defendants were deliberately indifferent to a medical condition that arose due to their failure to provide Farris with an ADA attendant; the question is whether their actions amounted to deliberate indifference to his disability.  As it is clear that partial paraplegia constitutes a serious medical, the objective component of Farris' deliberate indifference claim has been met.

*Health Care Administrator Susan Kerr*

Defendant Kerr was the Health Care Administrator and ADA Coordinator at Robinson until her retirement in May 2015. From his transfer to Robinson in March 2015 until May 2015, Farris made oral and written requests to Kerr for an ADA attendant pursuant to Dr. Shah's orders. As the ADA Coordinator, IDOC Administrative Directives called for her to assess Farris' need for accommodations for access to programs and services.

There is some evidence that Kerr was notified (by way of grievances) of the difficulties Farris was experiencing changing his diapers and transferring from and to his wheelchair without an attendant. Despite receiving notification of Farris' complaints, Kerr did not seek to provide any additional assistance to Farris to ensure that he was able to ambulate in order to use the lavatory, change his diapers, and otherwise engage in activities of daily living. She also failed to ensure that Dr. Shah's orders were followed. *See Estelle*, 429 U.S. at 104-05 (concluding that deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally interfering with treatment once prescribed).

This evidence, when viewed in the light most favorable to Farris, is sufficient for a reasonable jury to conclude that Kerr was aware of a substantial risk of harm to Farris, but failed to take any action. As such, whether Kerr acted with deliberate indifference is a question of fact to be resolved by the jury.

*Director of Nursing Heather Wampler*

Farris has presented evidence that he notified Wampler both verbally and in writing that he had not received an ADA attendant, despite Dr. Shah's order for the same. Wampler was also contacted in regards to at least two grievances Farris submitted concerning this issue, and failed to take any action. It is of no consequence that Wampler lacked the authority to actually assign

an ADA attendant, as she suggests. She cannot simply ignore the issue, which the evidence suggests she did. Although a close call, Farris has presented sufficient evidence for a reasonable jury to conclude that Wampler knew of a substantial risk of serious harm to Farris, but failed to take reasonable measures to address the same. Accordingly, Count Three shall proceed against Defendant Wampler. Because there are factual issues that must be decided by a jury, Farris' request for summary judgment in his favor is denied.

*Health Care Administrator Phil Martin*

Phil Martin began working at Robinson as the Health Care Administrator in September 2015. Farris admits that he never had any contact or interaction with Martin, and there is no evidence that Martin was ever made aware of the issues set forth in this lawsuit. Because liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation, *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted), and no such personal involvement has been demonstrated with respect to Martin, he is entitled to judgment as a matter of law as to Count Three.

*Warden Randy Grounds*

Randy Grounds was the Warden of Robinson Correctional Center at the time of Farris' transfer in March 2015. However, Grounds left Robinson on medical leave on April 14, 2015 (Doc. 98-6 at 1). After Grounds' departure, Dee Dee Brookhart was the Acting Warden and Chief Administrative Officer at Robinson through November 2015. As Acting Warden, Brookhart had authority to sign documents, including grievances, on behalf of Randy Grounds (Doc. 98-7 at 2 and Doc. 94-5 at 29). Thus, although it appears as though Grounds signed off on the grievances submitted by Farris concerning issues with receiving an ADA attendant, Brookhart, actually reviewed the grievances. Because there is no evidence of Grounds' personal involvement in the alleged constitutional violation, summary judgment in his favor is

appropriate.

*Wexford Health Sources, Inc.*

Farris bases his deliberate indifference claim against Wexford on its purported policy of intentionally and willfully ignoring requests to provide Farris with an ADA attendant or transfer board. It is well settled that a private corporation cannot be held liable under § 1983 unless it maintained an unconstitutional policy or custom. *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015) (citing *Woodward v. Corr. Med. Servs. Of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)). A plaintiff pursuing a policy or custom theory of liability must show that policymakers were "deliberately indifferent as to the known or obvious consequences" of that policy or custom. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009) (quoting *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). "In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.*

In this instance, Wexford is entitled to judgment as a matter of law as there is no evidence that it instituted a policy or practice of ignoring inmate requests for ADA attendants or transfer boards. Indeed, Dr. Shah, a Wexford employee, provided the order for Farris to receive an ADA attendant. Although Wexford employees may have failed to ensure that Robinson carried out Dr. Shah's orders, there is no evidence that such failures were at the direction of Wexford. Accordingly, Wexford is entitled to summary judgment on Count Three.

## COUNT FOUR

While the Eighth Amendment prohibits "cruel and unusual punishment" of an inmate, not all prison conditions trigger Eighth Amendment scrutiny. *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). Only conditions of confinement that deny an inmate "basic human needs" or "the minimal civilized measure of life's necessities," such as food, medical care, or

sanitation, violate the Eighth Amendment. *Id.*; *See also Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court held that courts evaluating claims of unconstitutional conditions of confinement must consider: (1) whether the defendant prison officials acted with the requisite state of mind (the subjective component) and (2) whether the alleged deprivations were sufficiently serious to rise to the level of a constitutional violation (the objective component). In other words, to establish his Eighth Amendment claim, a plaintiff must show that he was subjected to conditions that denied him "the minimal civilized measure of life's necessities" *and* that Defendants acted with a culpable state of mind. *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (citing *Famer v. Brennan*, 511 U.S. 825, 847 (1994) ("[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.") (other citations omitted)).

Here, Farris has presented sufficient evidence that he was denied basic human needs such as food and sanitation, due to Robinson officials' failure to assign him an ADA attendant or to otherwise adequately accommodate his disability. Accordingly, he has met the objective component of his Eighth Amendment conditions of confinement claim. That said, the Court must also consider whether there is evidence that Defendants acted with the requisite state of mind in denying him the same.

### *Susan Kerr and Heather Wampler*

As previously noted, there is evidence Kerr and Wampler were aware that Farris was not assigned an ADA attendant to assist with his ADLs, in contravention of Dr. Shah's orders. There is also some evidence that these Defendants were notified Farris had difficulty transferring and changing his diapers without an attendant. It should have been obvious that these

circumstances would impede Farris' ability to engage in the "minimal civilized measure of life's necessities." Despite this knowledge, Kerr and Wampler failed to take any action to address Farris' complaints. These facts create a material issue for the jury's determination – whether Defendants' inaction violated the Eighth Amendment. Accordingly, Count Four will proceed against Defendants Kerr[3] and Wampler.

*Health Care Administrator Phil Martin*

As set forth above, Phil Martin didn't begin working at Robinson as the Health Care Administrator until September 2015. Because as Farris admits, he never had any contact or interaction with Martin, and there is no evidence that Martin was ever made aware of the issues Farris complains of in this lawsuit, Martin is also entitled to judgment as a matter of law on Count Four.

*Warden Randy Grounds*

The Court reiterates its discussion as to Warden Grounds in Count Three and finds that because there is no evidence of Grounds' personal involvement in any alleged constitutional violation (due to his absence from Robinson from April 14, 2015 through November 2015, summary judgment is warranted in his favor as to Count Four.

*Wexford Health Sources, Inc.*

As was true with Count Three, Farris has failed to present any evidence that Wexford instituted a policy or practice of ignoring inmate requests for ADA attendants or transfer boards. As such, there is no evidence that such a policy caused Farris to suffer from unconstitutional conditions of confinement. Therefore, Wexford is also entitled to judgment as a matter of law on Count Four.

---

[3] Defendant Kerr is not entitled to qualified immunity on Counts Three or Four as it is clearly established that denial of the minimal civilized measure of life's necessities, including meals and sanitation, and ignoring an inmate's complaints concerning his medical condition and treatment for the same, violates the Eighth Amendment.

## Conclusion

For the reasons stated above, the Motion for Summary Judgment filed by Defendants Wampler and Wexford (Doc. 93) is **GRANTED IN PART AND DENIED IN PART**, the Motion for Summary Judgment filed by Defendants Kerr, Grounds, Martin, and the IDOC (Doc. 98) is **GRANTED IN PART AND DENIED IN PART**, the Motion for Summary Judgment filed by Plaintiff against the IDOC Defendants (Doc. 99) is **DENIED**, and the Motion for Summary Judgment filed by Plaintiff against the Wexford Defendants (Doc. 101) is **DENIED**.

At the conclusion of this case, the Clerk of Court **SHALL ENTER JUDGMENT** against Plaintiff Kenneth Farris, Jr. and in favor of Defendants Phil Martin, Randy Grounds, and Wexford Health Sources, Inc. Plaintiff shall proceed to trial on the following Counts:

Count One: Violation of the Americans with Disabilities Act against the IDOC.

Count Two: Violation of the Rehabilitation Act against the IDOC.

Count Three: Eighth Amendment deliberate indifference claim against Kerr and Wampler.

Count Four: Eighth Amendment unconstitutional conditions of confinement claim against Kerr and Wampler.

**IT IS SO ORDERED.**

**DATED: June 19, 2018**

                                        **s/ Staci M. Yandle**
                                        **STACI M. YANDLE**
                                        **United States District Judge**